IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEENAN BROWN, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 21 C 1769 |
| McDONALDS RESTAURANTS OF ILLINOIS, INC. | ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

Keenan Brown, a *pro se* litigant, has sued McDonald's Restaurants of Illinois, Inc. (McDonalds) to recover damages from an incident that he alleges occurred in October 2019. Mr. Brown alleges that McDonalds employees failed to prepare his order correctly, and that one employee threw hot tea at him, causing him an injury. Fact discovery is now closed, and McDonalds has moved to dismiss the case as a sanction under Federal Rule of Civil Procedure 37 and the Court's inherent power. McDonalds has also moved to dismiss, in the alternative, for lack of federal subject matter jurisdiction under 28 U.S.C. § 1332(a). Mr. Brown has filed a cross motion for sanctions. For the reasons set forth below, the Court grants McDonald's motion for sanctions, denies Mr. Brown's motion, and dismisses the case with prejudice.

### Background

In November 2019, Mr. Brown filed a *pro se* lawsuit in state court against McDonald's Restaurants of Illinois, Inc. regarding an incident he alleged occurred in an Illinois McDonald's restaurant in October 2019. He asserted what would be

considered under Illinois law to be a claim of willful and wanton conduct. In January 2020, Mr. Brown voluntarily dismissed the state court case and then filed suit in federal court against "McDonalds Inc." on February 5, 2020, asserting essentially the same claim. *See Brown v. McDonalds Inc.*, Case No. 20 C 851 (N.D. Ill.). On March 25, 2020, the Court dismissed Mr. Brown's complaint, saying he had sued the wrong defendant[1] and concluding that given the defendant he had sued, diversity-of-citizenship jurisdiction was lacking. He then filed an amended complaint involving the same events, this time naming "McDonalds Restaurants Inc." and citing several federal statutes, including 42 U.S.C. § 1981, as a basis for his claim. On May 18, 2020, the Court entered judgment dismissing Mr. Brown's federal claim for failure to state a claim and dismissing any state law claims for lack of subject matter jurisdiction.

In March 2021, Mr. Brown filed the present lawsuit, which was initially assigned to another judge and then transferred to the undersigned judge because it amounted to a refiling of the earlier case. This time, Mr. Brown sued McDonald's Restaurants of Illinois, Inc., which the Court will refer to from here on in as McDonalds. The lawsuit concerned the same alleged events as the earlier suit. Mr. Brown asserted a state law negligence claim and a claim under 42 U.S.C. § 1981. As support for his section 1981 claim, Mr. Brown alleged that the McDonalds employee had engaged in misconduct based on Mr. Brown's race. McDonalds moved to dismiss. On December 8, 2021, the Court found that Mr. Brown had

---

[1] The Court concluded that if Mr. Brown wanted to assert a claim of vicarious liability for the alleged acts of the restaurant employee, he would have to sue the particular franchisee that owned the restaurant in question, not the national corporate entity.

sufficiently established diversity of citizenship (to the extent that was needed); overruled McDonalds's claim preclusion (*res judicata*) argument based on the dismissal of the previous lawsuit; and concluded that he had stated a claim for negligence. The Court concluded, however, that Mr. Brown had not stated a viable section 1981 claim because "he has not alleged any interference with the right to make and enforce a contract as required under the statute . . . ." *Brown v. McDonalds Restaurants of Illinois, Inc.*, No. 21 C 1768, slip op. at 4 (N.D. Ill. Dec. 8, 2021).

     Mr. Brown then filed a motion for attorney representation, stating that he could not afford to retain counsel and had tried without success to find counsel on his own. The Court granted Mr. Brown's motion and appointed an attorney to represent him. About a month after the appointment, Mr. Brown filed a motion to discharge his appointed counsel and proceed *pro se*. On March 17, 2022, the Court granted the motion. Mr. Brown has prosecuted the case *pro se* since that point.

     The Court's involvement in disputes regarding the parties' discovery requests extends back to December 2021. This case has involved considerable motion practice relating to discovery. In particular, McDonalds invoked the Court's authority on several occasions to attempt to obtain compliance from Mr. Brown with its discovery requests (Mr. Brown also filed a number of discovery-related motions).

     McDonalds's current motion is based primarily on its contention that, through dilatory and obstructive tactics, Mr. Brown has consistently refused to provide relevant discovery, violated procedural rules, and litigated the case in bad faith. This, McDonalds contends, has precluded it from being able to meaningfully formulate a

defense to Mr. Brown's allegations.

Mr. Brown's motion is, in some ways, the converse of the motion filed by McDonalds. He contends that McDonald's has acted improperly throughout the discovery process, made false statements, and defamed his character. Mr. Brown opposes dismissal of his claims and seeks sanctions[2] against McDonald's for the harm he contends its conduct has caused him.

## Discussion

Rule 37(b) allows dismissal of an action as a sanction if a party "fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A)(v). "[I]t is axiomatic that the appropriateness of lesser sanctions need not be explored if the circumstances justify imposition of the ultimate penalty—dismissal with prejudice." *Dotson v. Bravo*, 321 F.3d 663, 667 (7th Cir. 2003). A Court may dismiss an action as a sanction under Rule 37(b) even if the plaintiff is *pro se*, as "even those who are pro se must follow court rules and directives." *McInnis v. Duncan*, 697 F.3d 661, 665 (7th Cir. 2012).

Incomplete or evasive responses to interrogatories may be grounds for dismissal of an action under Rule 37(b). *See Aura Lamp & Lighting Inc. v. Int'l Trading Corp.*, 325 F.3d 903, 909 (7th Cir. 2003). The same is true of a party's failure to respond to requests for production. *Hindmon v. Nat'l Ben Franklin Life Ins. Corp.*, 677 F.2d 617, 620 (7th Cir.1982). Dismissal may also be a proper sanction for misconduct during a deposition. *Donelson v. Hardy*, 931 F.3d 565, 569 (7th Cir. 2019) (affirming a district court's dismissal of an action as a sanction for a plaintiff's refusal to answer deposition

---

[2] The full extent of the sanction Mr. Brown seeks is unclear, but at a minimum, he seeks some form of monetary sanction and an order compelling another two-to-three-hour deposition of Shannon LeRette.

questions by pretending to be confused, lodging false accusations at defense counsel, improperly deeming questions irrelevant, and generally being evasive and argumentative); *see also*, *Crown Life Ins. Co. v. Craig*, 995 F.2d 1376, 1382 (7th Cir. 1993) (holding that "an award of sanctions must be proportionate to the circumstances surrounding the failure to comply with discovery" and that the sanction of dismissal was proportionate to the plaintiff's "willful failure to comply with discovery orders and [the plaintiff's] record of contumacious conduct.").

In addition, a court has inherent authority to impose sanctions for litigation misconduct that involves "bad faith, designed to obstruct the judicial process, or a violation of a court order." *REXA, Inc. v. Chester*, 4 F.4th 652, 671 (7th Cir. 2022).

**A.     Depositions**

Three witnesses had their depositions taken in this case. McDonalds took Mr. Brown's deposition, and Mr. Brown took the deposition of Shannon LeRette and Taylor Tkokoszka. Ms. LeRette and Ms. Tkokoszka are claims resolution managers employed by Gallagher Bassett, the firm that handled Mr. Brown's internal claim that he submitted to McDonalds following the incident. The Court has reviewed the transcript of all three depositions as well as the recordings of the depositions of Mr. Brown and Ms. Tkokoszka. The Court concludes that Mr. Brown's conduct warrants dismissal of his claims under both Rule 37(b) and the Court's inherent power.

**1.     Mr. Brown's deposition**

On August 29, 2022, Stacy Fulco, one of McDonald's attorneys, took Mr. Brown's deposition. During his four-hour deposition, Mr. Brown was obstructive, falsely obtuse, and combative. From start to finish, he lodged improper objection after improper

5

objection and refused to answer almost all of the questions he was asked. Virtually all of Mr. Brown's objections were unfounded, and many included improper narratives. Mr. Brown also repeatedly objected on the grounds that Ms. Fulco was repeating questions that had already been asked and answered. But it is clear from the record that Ms. Fulco only repeated questions that Mr. Brown had not yet answered. It is clear from the record that Mr. Brown also spoke condescendingly to Ms. Fulco and attempted to manipulate the written record to make it appear that Ms. Fulco was being hostile towards him when in fact, it was Mr. Brown who was being hostile toward Ms. Fulco.

  The deposition proceeded as follows. Ms. Fulco would pose a question, and Mr. Brown would state an objection. The majority of his objections involved the claimed irrelevance of the question, including for questions that indisputably involved the incident alleged in Mr. Brown's complaint. Ms. Fulco would then ask Mr. Brown if he was refusing to answer the question. Mr. Brown would then argue with Ms. Fulco, stating that he was not refusing to answer but rather was objecting to the question. He would also often provide his own narrative of the events completely unrelated to the question, make outlandish accusations about Ms. Fulco and others associated with McDonalds, demand that Ms. Fulco move on to the next question, and ask questions of his own. Ms. Brown would also repeatedly demand that Ms. Fulco simply refer to his complaint and other case-related documents for the answers to her questions. He also repeatedly suggested that Ms. Fulco was withholding evidence or attempting to trap him in a lie because, from his perspective, she already knew everything she needed to know about the incident. Mr. Brown went as far as to claim that Ms. Fulco was acting in a discriminatory fashion towards him.

Ms. Fulco repeatedly explained to Mr. Brown—completely appropriately—that, during a deposition, she was entitled to ask him questions and he was not permitted to ask questions of her or speak extemporaneously about whatever he felt like asserting. Ms. Fulco also explained—again, completely appropriately—that, as a *pro se* litigant, he was entitled to make objections for the record but still had to answer her questions after stating his objections. Despite these appropriate reminders, Mr. Brown refused to abide by the rules. After going back and forth in this manner on almost every single question she asked, Ms. Fulco would eventually "certify" the question—in other words, identify it for review by the Court—due to Mr. Brown's refusal to respond. Ms. Fulco ultimately certified more than 60 questions. She also moved to strike dozens of Mr. Brown's answers as unresponsive. Mr. Brown would even interrupt Ms. Fulco as she was trying to certify questions, moving to strike questions, or otherwise making a record of what was occurring. He also incessantly claimed that her objections were improper—which they most certainly were not.

It is unnecessary for the Court to describe each and every instance on which Mr. Brown violated the rules or acted improperly during his deposition. Below are just a handful of illustrative examples of Mr. Brown's unresponsive and improper answers to Ms. Fulco's questions:

> Q. After you placed your order, what's the next thing you recall taking place?
>
> A. It seems like to me no matter what I say and you guys have the files, you just want to see what you can have to prepare the next deposition for Taylor, which is Wednesday. You have the files. What did they say what Mr. Brown do because that's the same question that you asked me again. This is still the same thing. So, this is asked, answered referring to the same question. This is in my complaint. This is the same thing, you keep asking the same questions.

7

> Q. Are you going to answer?
>
> A. This is an objection. This is the same questions over. You asked me what did I do after. Two boiling hot waters were thrown at like I explained before. Now, speaking on the issue, wouldn't I be correct?
>
> Q. So, I'm trying to figure out the order then of this all.
>
> A. It's on the video, it's on the notes.

Brown Dep. at 113:15–114:12.

> Q. So, where was -- when L was getting, employee L was getting the teas ready, where was she in relation to you? Was this done on the opposite side, like where was the hot water that he had to put in the cups, do you recall?
>
> A. I'm going to object to this. It's in my complaint. It's in my papers. I'm going to object to it. You saw the video, just put it on the record. You saw the video, you're pretending like you didn't see the video. Taylor saw it. You chose not to give me eight pages, nine pages, but you're blocking it out. You're pretending like you don't know what happened and you want my version of it, so that you can prepare Taylor for it on Wednesday. I'm going to object to that. No matter if I was standing in the bathroom he still shouldn't have no reason to throw two large hot teas at Pro Se. No matter what it was, you don't treat paying customers that is polite to you, you don't discriminate against people, it's illegal.
>
> Q. Are you going to answer my question?
>
> A. I answered your question. Can we move forward?
>
> MS. FULCO: Certify.
>
> BY MS. FULCO:
>
> Q. What kind of cup did the employee put the hot tea in? Can you describe the cup?
>
> A. It was a McDonald's cup.
>
> Q. There's multiple types. Can you describe it?
>
> A. It was a McDonald's cup.

Q. Can you give me anymore description?

A. It was a McDonald's cup.

Q. Are you able to give me anymore description?

A. It's a McDonald's cup. This is the seventh time you're asking me this. It was a McDonald's cup.

MS. FULCO: Certify the question.

THE WITNESS: Object to my response.

*Id.* at 124:3–125:20.

Q. Before anything occurred with either tea, was he holding one tea in each hand?

A. He threw them, he threw them. I gave you an answer. He threw them. He threw them. He threw them. That's all I can tell you, he threw them. That was the failure on the defendant's end.

MS. FULCO: Objection, answer not responsive to –

THE WITNESS: Objection, improper. That was an improper objection. That was an improper objection. See, when I tell you something, you do your own thing.

BY MS. FULCO:

Q. At any point before the tea incident, was the employee holding either or both of the teas?

A. Asked, answered, referring to the same question, objection. Let's move forward. You just asked this four times. In the name of Jesus Christ, you asked this five times. You make it seem like I'm not being compliant and which I am.

*Id.* at 132:14–133:12.

Q. Your position is that an employee threw tea at you and tea did not spill; is that correct?

A. That is a mis-testimony. I never stated anything like that. You just said my view and I didn't give you that. You just something didn't spill on me. You just made all that up. I didn't say that, that's mis-testimony. You just

9

> made it up. You really just told a false statement right in front of me. You just said it didn't spill. Are you kidding me? So, this is where mand [sic] came from.

*Id.* at 133:15–134:3.

> Q. Did you speak with a supervisor or manager after the incident while you were still at the restaurant that day?
>
> A. This is nothing but just a client/attorney privilege. I'm going to object to that next question.

*Id.* at 155:19–24.

> Q. After the tea incident, did you sit down in the dining room or did you leave?
>
> A. You do know I filled out the claim report. You are aware of that. That was the first complaint, that was number six document. We both know the answer to that next question.
>
> Q. Sir, I'm trying -- I need you to not tell me what I know and what I don't know. So, after the tea incident, did you complete an incident report before you walked out?
>
> A. That's in the court docket.
>
> Q. Is that a yes or is that a no?
>
> A. It is a yes. You don't have it? Why so angry? For the record, why are you so hostile and angry?
>
> Q. I'm not, sir. I would just like you to answer the question.

*Id.* at 158:3–19.

> Q. At any point while you were inside the restaurant either before or after the incident, did you call or text anyone?
>
> A. That is beyond objection. That's none of your business. That's irrelevant, that's objection. So, move on to the next question. It seems like you're asking questions that are irrelevant at this point. You're searching for something.
>
> Q. At anytime after the incident while you were still at the restaurant, did you call 911 or ask anyone at the restaurant to call 911?

> A. I'm just confused about this whole situations. It's so big, vague; two compound questions. You're asking me, did somebody say this did somebody say that. I don't know what to say on this one. Thank God I'm not dead. I'm pretty sure if I'm dead that they would call 911, but I'm alive, thank God. I didn't retaliate. The police didn't come in because of me retaliating. Thank God I didn't retaliate because I probably would have gotten killed.

*Id.* at 163:23–164:23.

> MR. BROWN: . . . . So, this is your last question that I'm going to answer it, so that all parties can get proper rest. This is not no 12-hour deposition. I'm the victim. Because if you think you can do 12 hours, you really been deprived. You're going to turn this into a criminal activity, you're trying to turn me into a criminal.
>
> MS. FULCO: You done?
>
> THE WITNESS: Yes, I'm done. This is your last question you can ask me and I'm out.

*Id.* at 177:23–178:9.

Mr. Brown's open defiance of procedural rules led to an unnecessarily long, burdensome, and completely fruitless deposition for McDonalds, the purpose of which was to gather information to ascertain the factual basis for Mr. Brown's claims and enable McDonalds to prepare a defense. *See Hunt v. DaVita, Inc.*, 680 F.3d 775, 780 (7th Cir. 2012) ("The fact-finding purpose of a deposition requires testimony from the witness . . ."). Mr. Brown repeatedly, and deliberately, obstructed McDonalds's appropriate use of the discovery process. Under the circumstances, dismissal of Mr. Brown's claims is warranted. The Court acknowledges that dismissal with prejudice is a "harsh sanction" that should be used only "when there is a clear record of delay or contumacious conduct[.]" *Webber v. Eye Corp.*, 721 F.2d 1067, 1069 (7th Cir. 1983). But this is such a case, even if one considers only Mr. Brown's conduct during his own

11

deposition. The Court is confident that this is a case in which there is a clear record of willful disobedience of the rules of procedure, which is the very definition of contumacious conduct. Dismissal of Mr. Brown's claims with prejudice is warranted under Rule 37(b).

### 2. Shannon LeRette and Taylor Tkokoszka's depositions

On July 26, 2022, Mr. Brown took the deposition of Ms. LeRette for approximately five hours. On August 31, 2022, Mr. Brown took the deposition of Ms. Tkokoszka for only twenty minutes before the court reporter put a stop to the deposition due to Mr. Brown's misconduct. Ms. Fulco appeared as counsel for McDonalds for Ms. Tkokoszka's deposition; another attorney for McDonalds, Margaret MacNair, appeared for LeRette's. McDonalds contends, and the Court agrees, that Mr. Brown behaved equally inappropriately and combatively during these depositions as he did during his own. And there is no basis to find that McDonalds violated any discovery rules or otherwise acted improperly during either of these depositions.

Mr. Brown contends that McDonalds tried to sabotage the LeRette and Tkokoszka depositions in a number of ways. First, regarding Ms. LeRette's deposition, Mr. Brown seizes upon the fact that Andrew Boros—an in-house McDonalds attorney, specifically, senior counsel with the McDonalds Tort Litigation Practice Group— appeared at Ms. LeRette's deposition. It is clear beyond peradventure, however, that McDonalds was entitled to have a corporate representative present at the deposition, and that is what Mr. Boros was. That aside, after Mr. Brown asked Mr. Boros to leave, he did so.

Second, Mr. Brown contends that Ms. MacNair obstructed the LeRette deposition

12

by repeatedly instructing Ms. LeRette not to answer questions, asking to take breaks, and "harass[ing] and annoy[ing] [Mr. Brown] to throw him off." Pl.'s Mot. for Sanctions, ¶ 10. None of these contentions have merit. There is no basis to conclude that Ms. MacNair was harassing or trying to intentionally "throw off" Mr. Brown, and his feeling of annoyance is not a basis to sanction McDonalds.[3] Under Rule 30(c)(2), Ms. MacNair was obligated to make objections to "evidence, to [Mr. Brown's] conduct . . . to [Mr. Brown's] manner of taking the deposition, or to any other aspect of the deposition." Fed. R. Civ. P. 30(c)(2). Ms. MacNair was also entitled to instruct her client not to answer to questions protected by the attorney-client or work product privilege, or those relating to a Rule 30(d)(3) termination of the deposition. After reviewing the record, the Court does not find any of those objections or instructions were unwarranted. In fact, Ms. MacNair's conduct was reasonable given the inappropriateness of Mr. Brown's questioning. For the same reason, it was also reasonable for Ms. MacNair to ask for a break when she did so. But even that became a point of contention for Mr. Brown:

> THE COURT REPORTER: Wait just a minute, I need to take a break, it's getting out of hand.
>
> MS. MACNAIR: Let's take a ten minute break and come back then at I guess --
>
> MR. BROWN: Well, no, no, no, no, no, Miss Marcia, if you want to take your break, that's fine, I understand, you deserve it. It takes a lot of brain power to do what you do. Now, the other two, you guys can sit here because we not gonna have no secret phone conversation or text messaging. We not having any --
>
> MS. MACNAIR: We're not going to, but I need to get some water, I'd like to use the restroom. So I'm going to go, we'll take a ten minute break. We'll be back 12:15 our time, which would be 1:15 your time. Is that

---

[3] The Court also notes that Mr. Brown fails to cite to any specific examples in the record of conduct that was supposedly intended to "annoy" him.

13

>enough time, Marcia?
>
>THE COURT REPORTER: Yes.
>
>MS. MACNAIR: Okay, thank you.
>
>MR. BROWN: I will definitely put this on the record that both parties is leaving, both parties is leaving, not just for a break. One person is in their own home and the other person chose not to bring a water in their office.
>
>THE WITNESS: I have to go to the restroom. I have feminine things –
>
>MR. BROWN: I understand, I understand that, but it does jeopardize that you could be a secret conversation.

LeRette Dep. at 98:11–99:15.

Regarding both depositions, Mr. Brown contends that McDonalds failed to produce documents that he had requested ahead of time. Mr. Brown's subpoena stated as follows: "Please bring the following full investigation report exhibits of Call log, Phone Call Recording Notes taking form the Adjuster, and Affidavit upon deposition date." Def.'s Resp. to Pl.'s Mot. for Sanctions, Ex. A. Given the lack of clarity in this request, and the history of discovery up to that point, McDonalds acted reasonably when it advised Mr. Brown that the documents it appeared he was requesting had already been produced and/or objected to in response to earlier discovery requests. Mr. Brown simply ignores this and continues to assert that he is entitled to certain documents that are either not in McDonalds's possession or that had already been dealt with during written discovery.

Regarding Ms. Tkokoszka's deposition,[4] Mr. Brown contends that the witness

---

[4] Mr. Brown also contends that McDonald's should be sanctioned because Ms. Tkokoszka "refused to show up to deposition." Pl.'s Mot. for Sanctions, ¶ 27. This is not a basis for sanctions because Ms. Tkokoszka did not "refuse to show up." Rather, Ms. MacNair sent Mr. Brown an e-mail on July 26, 2022 at 6:15 PM, in advance of the

14

was "seen reading from a monitor screen" and "wearing an earpiece" to get advice from Ms. Fulco during the deposition. Pl.'s Mot. for Sanctions, ¶ 45-46. Mr. Brown also contends that McDonalds sabotaged the deposition by causing it to end early. Again, both of these contentions lack merit. Ms. Tkokoszka explained, on the record, that she had two monitors, only one of which had a camera she could look into. She also testified under oath that she was not reading from notes or in any way being simultaneously advised by counsel.

Regarding the termination of the deposition after only twenty minutes, it is clear from the record that the court reporter decided to leave and find another reporter to step in due to Mr. Brown's actions, particularly his actions towards the court reporter herself. Paragraphs 41, 42, and 52–56 of Mr. Brown's motion—in which he launches a slew of accusations against the court reporter completely unrelated to McDonalds's conduct—also indicate that his disagreement on this point lies with the court reporter, not McDonalds. As McDonalds correctly points out, Mr. Brown hired the court reporter himself. Whatever fault may lie with the court reporter for ending the deposition when she did—and the Court does not believe there was any under the circumstances—cannot be lain at the feet of McDonalds.

B.  Written discovery

During written discovery, Mr. Brown provided four sets of answers to McDonalds's interrogatories and two responses to its requests for production. But Mr.

---

scheduled deposition, stating: "I wanted to let you know as soon as I knew – we are canceling Taylor Kokoszka's deposition tomorrow at 10am. I will contact you about rescheduling shortly." Def.'s Mot. for Sanctions, Ex. K at 30. The deposition was later rescheduled.

Brown's interrogatory answers are woefully deficient, and his responses to McDonalds's requests for production are clearly incomplete. Mr. Brown objected to nearly all of the requests as vague, improper, or overly broad. His responses to McDonalds's requests for interrogatories followed this format almost every single time: "ANSWER: Objection. Request No. [ ]. Vague, improper, overly broad request. The production of a document which is improper under Federal Rule of Civil Procedure 34. This matter is not related to this case." Pl.'s Resp. to Def.'s Req. for Interrog, ¶¶ 14-16. Brown also frequently cited concern for his own health and safety as a basis to object to McDonalds's requests for basic demographic information such as his name, date of birth, address, etc.

Importantly, Mr. Brown completely refused any discovery into any medical treatment he received related to the hot tea incident. According to McDonalds, the records produced by Mr. Brown involved "clearly unrelated and irrelevant medical treatment relating to: tooth extractions; left knee problems; care for injuries following a car accident; care relating to strep throat; and treatment and testing for pain and enlarged lymph nodes in his neck." Def.'s Mot. for Sanctions at 10-11. Mr. Brown's refusal to provide medical records related to his injuries from the hot tea incident casts doubt on his claim of injury. More importantly for present purposes, however, Mr. Brown's refusal to comply with the Court's discovery orders precluded McDonalds from being able to prepare its defense. The Court finds that Mr. Brown has willfully, and in bad faith, failed to provide discovery responses.

The Court has also considered Mr. Brown's various other contentions in support of his request for sanctions—that McDonalds has engaged in defamation, made false accusations, etc.—and finds them to lack merit.

For the reasons stated above, the Court denies Mr. Brown's motion for sanctions and grants McDonalds's motion.

The Court acknowledges that Mr. Brown is a *pro se* litigant and that self-representation can be challenging. But the Court recruited a lawyer to represent Mr. Brown, and he declined and insisted on proceeding without counsel. Mr. Brown's choice to proceed *pro se* is therefore exactly that: a choice. All litigants, whether *pro se* or not, are required to abide by the rules and litigate in good faith.

The Court understands that Mr. Brown believes that he has been subjected to a grave injustice. But his decision to pursue a legal remedy for that injustice comes with certain limitations and requirements. The rules of procedure, and for that matter fundamental fairness, do not permit a litigant to thwart the ability of the party he sued to obtain relevant information about his claims so that it can prepare a defense. But that is exactly what Mr. Brown has done. His conduct during the litigation shows that no sanction short of dismissal of his claims is sufficient.

## Conclusion

For the aforementioned reasons, the Court grants defendant's motion for sanctions [dkt. no. 107] and denies plaintiff's cross motion for sanctions [dkt. no. 134]. The Court denies defendant's motion for summary judgment [dkt. no. 149] as moot. The Court directs the Clerk to enter judgment in favor of defendant McDonald's Restaurants of Illinois, Inc. and against plaintiff Keenan Brown dismissing the plaintiff's claims with prejudice.

Date: March 28, 2023

_____
MATTHEW F. KENNELLY
United States District Judge